# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

-----------------------------------------------------------------X

JON Q. WRIGHT  and JQ LICENSING, LLC

    **Plaintiffs,**

    v.

TROY R. HANSEN, CASTLE DANGER
WOODWORKS, LLC, ANTLER LAKE LODGE
INC., MINER'S INCORPORATED d/b/a SUPER
ONE FOODS, and ZUP'S OF BABBITT-AURORA,
INC.

    **Defendants.**

-----------------------------------------------------------------X

Case No.:

**COMPLAINT FOR
COPYRIGHT
INFRINGEMENT**

## COMPLAINT

Plaintiffs Jon Q. Wright ("JQW") and JQ Licensing, LLC (collectively, the "Plaintiffs"), by and through their undersigned attorney, hereby pray to this honorable Court for relief based on the following:

## INTRODUCTION

1.      This action arises from Defendants' willful copyright infringement of Plaintiffs' copyrighted and valuable illustration. Plaintiffs seek to obtain injunctive relief against Defendants Troy R. Hansen, Castle Danger Woodworks, LLC, Antler Lake Lodge Inc., Miner's Incorporated d/b/a Super One Foods, and Zup's of Babbitt-Aurora, Inc. to stop their continuing infringement and prevent any further unlawful infringement of Plaintiffs' artwork.  Defendants' infringement has damaged Plaintiffs' business and threatens to damage it further. Plaintiffs seek injunctive

1

relief, declaratory relief, and damages for the full amount of Plaintiffs' losses, as well as Defendants' profits, or if elected, statutory damages, as well as attorneys' fees, and costs pursuant to 17 U.S.C. §§ 504(c) and 505.

## THE PARTIES

2.      Plaintiff Jon Q. Wright is an individual domiciled and residing in the State of Montana.

3.      Wright is a member of JQ Licensing LLC, a limited liability company duly formed under the laws of the State of Minnesota and registered in the State of Montana as a foreign limited liability company (hereafter, "JQ Licensing").  Wright licenses his artwork exclusively through JQ Licensing.

4.      Defendant Troy R. Hansen ("Hansen") is an individual residing in Two Harbors, Minnesota.

5.      Defendant Castle Danger Woodworks, LLC ("Castle Danger") is a limited liability company formed and existing under the laws of the State of Minnesota, with a principal place of business in Two Harbors, Minnesota.

6.      Defendant Antler Lake Lodge Inc., ("Antler Lake Lodge") is a corporation formed and existing under the laws of the State of Minnesota, with a principal place of business in Big Fork, Minnesota.

7.      Miner's Incorporated d/b/a Super One Foods ("Super One") is a corporation formed and existing under the laws of the State of Minnesota, with a principal place of business in Hermantown, Minnesota.

8.      Zup's of Babbitt-Aurora, Inc ("Zup's") is a corporation formed and existing under the laws of the State of Minnesota, with a principal place of business in Ely, Minnesota.

## JURISDICTION AND VENUE

9.    This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended).

10.    This Court has subject matter jurisdiction over Plaintiffs' copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended) and 28 U.S.C. §§ 1331 and 1338.

11.    Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400 in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and the judicial district wherein the Defendants can be found.

## PLAINTIFFS' WORK OF ART

12.    In 1993, JQW authored Walleye Green Lure (the "Subject Work"), which consists of a highly detailed depiction of a walleye fish, out of the water and chasing after a green and yellow lure. An image of Walleye Green Lure is shown below:



13.    JQW registered the Subject Work with the U.S. Copyright Office under Registration No. VAu 1-021-822, as a collection of illustrations of different species of fish, all authored by JQW.

This registration, entitled "JQ Fish Art," has an effective date of July 10, 2009. A copy of the JQ Fish Art registration certificate is annexed hereto as **Exhibit A**.

14.     JQW's practice of creating highly detailed and unique wildlife illustrations is an extraordinarily time-consuming process, involving a dizzying multiplicity of steps.

15.     In order to create his detailed fish illustrations, including the Subject Work, JQW first faces the laborious task of catching a trophy-sized specimen of the subject fish.

16.     Once a trophy fish is caught, JQW takes detailed photographs of the fish, freezes, and then partially thaws the fish in order to mold the body into the desired position. He then impales the fish with numerous stakes to preserve the particular and desired pose, then captures a 360° perspective of the manipulated through a series of photographs.

17.     Only then does JQW begin the sketching process, referring to the photographs as reference material.

18.     JQW then takes numerous artistic liberties with certain aspects of each fish. He expresses elements of each fish in a manner that is creative and unique to his style and artistic abilities.

19.     With respect to the Subject Work, JQW has taken creative license with certain body parts, including but not limited to, body and tail length to depict the fish "in action," jumping from the water, and to otherwise give the viewer the impression that the fish is "trophy sized" by creatively manipulating the size, shape, and direction of anatomical features in ways which are not possible to fish in nature.

20.     The Subject Work reflects the result of extensive creative choices in composition, anatomy, perspective, and stylization, and therefore constitutes original expression entitled to broad copyright protection.

21.     JQW's artwork has been painstakingly created, with each minute original detail being

depicted with precision.

22.     JQW estimates that he has spent hundreds of hours painting a single one of his fish illustrations, touching each individual painted fish scale with a paintbrush between three and five times.

23.     In creating and expression of a walleye that is visually exciting to the viewer, JQW has effectually created a walleye that is comprised of design elements and other creative features that do not exist in nature.

24.     JQW artwork is very valuable, as there are not many artists painting freshwater fish, and even fewer creating works with the type of detail employed by JQW.

25.     Because of JQW's unique talents, painstaking attention to detail, and unique expression of fish of all species, his artwork is highly pursued.

26.     JQW's success as a wildlife illustrator, and by implication the value of his artwork, is dependent on experience, patience, and dedication, and each of his paintings is built on his talent and 40 years of expertise.

## THE INFRINGING DESIGN & PRODUCTS

27.     Castle Danger is a business specializing in producing wood-burned and/or laser engraved products such as wall art, coasters, key chains, cribbage boards, and other decorative goods.

28.     Hansen is the sole member, manager, and operator of the Castle Danger.

29.     Hansen is responsible for selecting the designs to be featured on Castle Danger's products, modifying designs as needed so that they can be reproduced cleanly on finished goods, manufacturing those products, and overseeing all aspects of product development and sale.

30.    Hansen personally controls Castle Danger's design process from start to finish, including sourcing or creating artwork, adjusting images for laser engraving and wood-burning applications, and determining which designs are offered for retail sale.

31.    Upon information and belief, Hansen also supervises Castle Danger's online marketing and manages its relationships with retail partners and distributors, including Antler Lake Lodge, Super One Foods, and Zup's (the "Retailers").

32.    Hansen, by and through Castle Danger, created, manufactured, produced, and/or designed various goods (the "Infringing Products") featuring a design that is a near exact copy of the Subject Work, or a substantial portion thereof (the "Infringing Design").

33.    Directly below is an exemplar of an Infringing Product:



[remainder of page intentionally blank]

34.     Side-by-side comparisons of the Subject Work (left) and the Infringing Design/Product (right) demonstrates that the walleye in the Infringing Design/Product unlawfully copies JQW's protectable elements of expression contained in the Subject Work:



35.     The visual comparisons and overlay demonstrate unlawful copying of protectable, highly specific elements of expression, including, but not limited to: (a) the head and jawline—identical open-mouth contour, curvature of the jaw, and proportional relationship of upper to lower mandible; (b) the eye—matching size, shape, and orientation relative to the mouth and head; (c)

the gill plate and throat pouch—replicated stylized folds, arcs, and hatching beneath the head; (d) the overall body contour—alignment of the body's curve and the proportions between head, midsection, and tail; (e) the dorsal fin—same number, length, spacing, and interior shading of spines/rays; (f) the pectoral and pelvic fins—same angles and stylization; (g) the tail fin—corresponding bifurcated lobes, angles, and internal linework; and (h) shading, stippling, and directional line work along the body and tail—reflecting Wright's distinctive style rather than generic fish anatomy.

36.    JQW created all of the previously detailed artistic expressions in order to accentuate and overexaggerate the features of a walleye fish, with the goal of creating an expression of a walleye that is visually exciting to the viewer.

37.    In creating and expression of a walleye that is visually exciting to the viewer, JQW has effectually created a walleye that is comprised of design elements and other creative features that do not exist in nature.

38.    The comparisons above show that the Infringing Design reproduces numerous distinctive hand-drawn and painted elements from the Subject Work. In particular, Hansen/Castle Danger copied Jon Q. Wright's unique placement, length, weight, and curvature of lines, including the number, direction, and arrangement of strokes within the gill, the lines forming the various parts of the mouth, and the depth and placement of shading from the same light source around the head—demonstrating direct copying of Mr. Wright's original artistic expression.

39.    Upon information and belief, and once a high-quality copy of the Infringing Design is obtained, it will further reveal that Defendants copied the distinctive scale and spotting pattern that appears in the Subject Work. That pattern was hand-painted by Wright based on his own creative

judgment and artistic expression rather than any fixed or naturally occurring pattern in a real walleye.

40.     Upon information and belief, Hansen/Castle Danger purposefully altered the Subject Work so that it could be more easily and cleanly reproduced during the wood-burning and engraving manufacturing process, including adjusting perspective, simplifying fine details, and modifying contours. Such changes were mechanical and functional in nature—intended to simplify production and improve clarity on wood surfaces.

41.     Nearly all of the original and protectable creative expressions embodied in the Subject Work, such as the composition, posture, proportions, placement of shading, and the unique depiction of anatomical features—were directly copied and remain plainly recognizable in the Infringing Design.

42.     Hansen/Castle Danger reproduced the Infringing Design on the Infringing Products, then distributed/sold for resale the Infringing Products to the Retailers.

43.     The Retailers then displayed, offered for sale, distributed, and/or sold the Infringing Products to customers visiting their respective retail locations.

44.     Upon information and belief, Hansen/Castle Danger distributed/sold for resale the Infringing Products to presently unknown third parties who also displayed, offered for sale, distributed, and/or sold the Infringing Products to customers visiting their retail locations. Upon discovery of the identities of all such parties, Plaintiffs will amend the Complaint accordingly.

45.     The allegations herein are made as to all material, products, photographs, advertisements, etc., that Defendants used, created, copied, marketed, displayed, distributed, or sold that incorporate the Subject Work and/or the Infringing Design and the images and comparisons depicted herein are only exemplars.

46.     Defendants' infringing conduct was undertaken to reap the creative and artistic benefit and value of the Subject Work.

47.     Hansen/Castle Danger had access to the Subject Work, including, without limitation, through JQW's website and social media accounts or by viewing the Subject Work on third-party websites, third-party products, or via other displays of the Subject Work.

48.     Hansen/Castle Danger willfully misappropriated the Subject Work, and with blatant and reckless disregard for JQW's rights in and to the Subject Work, by failing to ensure its use of the same was proper, despite the fact that Hansen/Castle Danger  knew of its infringing nature.

49.     Plaintiffs, through counsel, issued a written cease and desist letter to Defendants Hansen/Castle Danger, providing clear notice of their infringement and through subsequent communicating, side-by-side visual comparisons and detailed analysis regarding the extent of the copying.

50.     Hansen/Castle Danger ultimately responded that they did not intend to cease selling or distributing the Infringing Products, thereby confirming their deliberate and continuing disregard for Plaintiffs' rights.

51.     Upon information and belief, Hansen/Castle Danger continue to distribute, sell, offer for sale, reproduce, or otherwise exploit the Infringing Products and the Infringing Design.

52.     Upon information and belief, the Retailers continue to sell the Infringing Products.

53.     Hansen/Castle Danger's continuing acts of infringement amount to a blatant and reckless disregard for JQW's rights in and to the Subject Work.

54.     As a result of Defendants' infringement of JQW's copyrights in and to the Subject Works, JQW has suffered significant damage.  Specifically, JQW has lost royalties and licensing revenue

and have suffered dilution and diminishment of the value of the Subject Work as the Infringing Design is crude, unsophisticated, and poorly executed.

### COUNT I
### (COPYRIGHT INFRINGEMENT – 17 U.S.C. §101, *et seq.* – Against All Defendants, and Each)

55.     Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

56.     JQW is the sole owner of the Subject Work and holds a valid copyright registration in accordance with the United State Copyright Act.

57.     The Subject Work is copyrightable subject matter under 17 U.S.C. §102(a).

58.     JQW has complied in all respects with the provisions and requirements of the Copyright Act.

59.     Prior to the acts complained of herein, JQW duly registered the copyrights in and to the Subject Work with the United States Copyright Office.

60.     JQW has exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Works.

61.     Hansen/Castle Danger had access to the Subject Work prior to creating the Infringing Design as the Subject Work has been prominently licensed and marketed nationwide through authorized retailers and online platforms. The Subject Work has appeared in catalogs and product listings easily accessible through ordinary internet searches.

62.     The Retailers had access to the Subject Work through their dealings with Hansen and Castle Danger; by selling, displaying, or promoting products supplied by Hansen/Castle Danger that incorporated the Infringing Design, the Retailers necessarily accessed the Subject Work through Defendants' Infringing Products.

63.     Access is also established by the striking similarity and/or identicality between the Subject Work and the Infringing Design, precluding any possibility of independent creation.

64.     As detailed *supra*., the Infringing Design is identical or virtually identical to the Subject Work.

65.     The Infringing Design copies all or virtually all protectable elements of expression unique to JQW's artistic style, as well as his creative and particular expressions of a walleye fish, as described herein.

66.     The Subject Work, including the walleye featured therein, is also the by-product of JQW's creative and original selection, coordination, and arrangement of elements.

67.     Hansen/Castle Danger infringed Plaintiffs' rights by copying the Subject Work and subsequently creating, making and/or developing directly infringing works and/or derivative works featuring the Subject Work, without authorization from Plaintiffs.

68.     Hansen/Castle Danger infringed Plaintiffs' rights by copying the creative and original selection, coordination, and arrangement of elements, without authorization from Plaintiffs.

69.     Hansen/Castle Danger were directly involved in the reproduction, distribution, display, adaptation, and/or creation of a derivative work, using the Subject Work, without authorization from Plaintiffs.

70.     The Retailers infringed Plaintiffs' rights by displaying, distributing, offering for sale, and selling the Infringing Products to the public without authorization from Plaintiffs.

71.     Due to Defendants' acts of copyright infringement as alleged herein, Plaintiffs have suffered damages in an amount to be established at trial, including without limitation lost profits, royalties, and a diminution in the value of the misappropriated works.

72.     As a result of the acts of infringement complained of herein, Defendants received revenues they would not have otherwise received, added brand value, and indirect sales and profits they would not have otherwise received.

73.     Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Works.  As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

74.     Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

### COUNT II
### (VICARIOUS LIABILITY – AGAINST HANSEN AND CASTLE DANGER)

75.     Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

76.     Hansen/Castle Danger are liable secondarily for the Retailers direct infringement because Hansen/Castle Danger have, at all relevant times, the right and ability to supervise the infringing conduct and derived a direct financial benefit from it.

77.     Hansen/Castle Danger possess the legal right to stop or limit the Retailers direct infringement, as well as the practical ability to do so.

78.     Hansen/Castle Danger had the legal right and practical ability to instruct the Retailers to cease selling, displaying, or distributing the Infringing Products at any time, for any reason or no reason at all. Through their ownership of the designs, control over the supply chain, and direct business relationships with the Retailers, Hansen/Castle Danger possessed and exercised supervisory authority over the Retailers' sales activities, and could have prevented or stopped the infringing conduct.

79.     Hansen has full control over, and final decision-making authority with respect to, among other things: (a) the design, manufacture, and selection of artwork used on Castle Danger's products, and (b) the creation, development, display, distribution, and publication of marketing and advertising materials used to promote Castle Danger's business.

80.     Hansen/Castle Danger derived a direct financial benefit from the Retailers' sales of Infringing Products through wholesale revenues, increased brand exposure, and expanded customer reach resulting from the Retailers' marketing and display of the Infringing Products.

81.     By virtue of their ability to control the infringing activity and their financial interest in the continued exploitation of the Infringing Products, Hansen/Castle Danger are vicariously liable for the Retailers' direct infringement of Plaintiffs' copyrights.

82.     As the owner, operator, and controlling individual of Castle Danger, Hansen receives a direct financial benefit from the exploitation of the Infringing Products and the Retailers' continued sales thereof, and profited as a result of that infringing activity.

83.     Due to Defendants' acts of copyright infringement as alleged herein, Plaintiffs have suffered damages in an amount to be established at trial, including without limitation lost profits, royalties, and a diminution in the value of the misappropriated works.

84.     As a result of the acts of infringement complained of herein, Defendants received revenues they would not have otherwise received, added brand value, and indirect sales and profits they would not have otherwise received.

85.     Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Works.  As such, Plaintiffs are entitled to disgorgement of Defendants'

profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

86.    Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

**COUNT III**
**(CONTRIBUTORY LIABILITY – AGAINST HANSEN AND CASTLE DANGER)**

87.    Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

88.    Hansen/Castle Danger knew or had reason to know that the Retailers' sale, display, and distribution of the Infringing Products infringed Plaintiffs' copyrights to the Subject Work.

89.    Despite this knowledge, Hansen/Castle Danger intentionally and materially contributed to the Retailers' infringing conduct by supplying, manufacturing, and distributing the Infringing Products, providing the Infringing Design and related promotional imagery, and encouraging or authorizing the Retailers to market and sell those products to the public.

90.    Hansen/Castle Danger provided the means, instrumentalities, and material assistance necessary for the Retailers' infringement, including furnishing finished goods that directly incorporated the Subject Work without authorization.

91.    Hansen/Castle Danger knew that they did not create the Subject Work and that the Infringing Design incorporated into the Infringing Products originated from another source.

92.    Despite knowing that the artwork was not their own and that they had not obtained any license, assignment, or authorization from Plaintiffs, Hansen/Castle Danger used the Subject Work in the manufacture and sale of the Infringing Products.

93.    Hansen/Castle Danger were placed on explicit notice of the infringement through Plaintiffs' cease and desist letter, yet refused to cease distribution or instruct Retailers to withdraw the Infringing Products.

94.    Rather than take remedial action, Hansen/Castle Danger continued to manufacture, sell, and distribute the Infringing Products, and knowingly permitted Retailers to display and sell them, thereby intentionally facilitating the ongoing infringement of Plaintiffs' copyright.

95.    Hansen/Castle Danger's knowing participation and encouragement of the Retailers' infringing acts constitutes contributory copyright infringement.

96.    Due to Defendants' acts of copyright infringement as alleged herein, Plaintiffs have suffered damages in an amount to be established at trial, including without limitation lost profits, royalties, and a diminution in the value of the misappropriated works.

97.    As a result of the acts of infringement complained of herein, Defendants received revenues they would not have otherwise received, added brand value, and indirect sales and profits they would not have otherwise received.

98.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Works.  As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

99.    Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests judgment against Defendants, jointly and severally, as follows:

A.    that the Court enter judgment against Defendants setting forth that Defendants have willfully infringed Plaintiffs' federally registered copyrights to the Subject Works as contemplated by 17 U.S.C. §504(c)(2);

B.   alternatively, that the Court enter judgment against Defendants setting forth that Defendants have infringed Plaintiffs' federally registered copyright to the Subject Works, pursuant to 17 U.S.C. § 501;

C.   that Defendants and their respective agents, officers and servants be enjoined from importing, manufacturing, distributing, displaying, offering for sale, selling or otherwise trafficking in any materials that infringe Plaintiffs' copyrights in and to Subject Works;

D.   impounding all unauthorized material that bears infringing copies of Plaintiffs' copyrighted artwork in the possession or control of Defendants pursuant to 17 U.S.C. §503(a)(1)(A), and ordering destruction of all unauthorized material bearing the Subject Works, pursuant to 17 U.S.C. §503(b);

E.   that Plaintiffs be awarded all profits of Defendants plus all losses of Plaintiffs, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages for willful infringement as available under 17 U.S.C. § 504(c);

F.   that Plaintiffs be awarded their attorneys' fees as available under 17 U.S.C. § 504(c) or other applicable statute;

G.   that Plaintiffs be awarded pre- and post-judgment interest as allowed by law;

H.   that Plaintiffs be awarded the costs of this action; and

I.   that Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Date:   October 10, 2025

/s/ Nathan M. Hansen
Nathan M. Hansen
Attorney At Law
P.O. Box 575
Willernie, MN 55090

MN Attorney Reg. No. 0328017
651-704-9600
Nathan@hansenlawoffice.com

Dmitry Lapin, Esq.
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
dmitry@axenfeldlaw.com
917-979-4570
*pro hac vice admission forthcoming*

*Attorneys for Plaintiffs*